UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROLAND LORENZO DIXON,

     Petitioner,

v.                             Case No. 8:20-cv-490-MSS-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

**O R D E R**

Dixon petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for aggravated assault with a firearm, possession of a firearm by a convicted felon, and carrying a concealed firearm. (Docs. 1 at 1 and 9-2 at 1235–36) After reviewing the petition (Doc. 1), the response and the appendix containing the relevant state court record (Doc. 14), and the reply (Doc. 15), the Court **DENIES** the petition.

**PROCEDURAL HISTORY**

A jury found Dixon guilty of aggravated assault with a firearm and carrying a concealed firearm (Doc. 14-2 at 18–19), and Dixon pleaded guilty to possession of a firearm by a convicted felon. (Doc. 14-2 at 30–35) The jury found that, during the commission of the aggravated assault, Dixon "did carry, display, use, threaten to use, or attempt to use a firearm," and "did discharge a firearm." (Doc. 14-2 at 18) The trial court sentenced Dixon to twenty years of prison with a twenty-year mandatory minimum term for a firearm enhancement for the aggravated assault conviction, a consecutive five years of prison for the carrying a concealed firearm conviction, and a concurrent five years of prison with a three-

year mandatory minimum term for a firearm enhancement for the possession of a firearm by a convicted felon conviction. (Doc. 14-2 at 21–28, 37–43) Dixon appealed (Doc. 14-2 at 45), and the state appellate court affirmed. (Doc. 14-2 at 47)

Dixon moved for post-conviction relief in state court (Doc. 14-2 at 51–52, 59–60, 81–101, 106–24, 172–73, 185–92), the post-conviction court denied relief (Doc. 14-2 at 57, 63, 104, 127–28, 178, 215), and the state appellate court affirmed. (Doc. 14-2 at 77, 168, 231) Dixon's federal petition follows.

## FACTS

Evidence at trial proved that Dixon committed aggravated assault and carried a concealed firearm.[1] Samuel Mitchell, Jr. testified that his ex-girlfriend was the sister of Elizabeth Cody, Dixon's girlfriend. (Doc. 14-2 at 449–50) Dixon became angry at Mitchell because of a disagreement between the two sisters. (Doc. 14-2 at 449–50) While visiting an apartment complex, Mitchell saw Dixon, Dixon waved at Mitchell, and Mitchell approached Dixon. (Doc. 14-2 at 452) Mitchell told Dixon that he was not involved in the disagreement between the sisters. (Doc. 14-2 at 452) Mitchell directed his attention to Dixon's girlfriend, who was also present, and Dixon responded by punching Mitchell. (Doc. 14-2 at 452–53) Dixon ran past Mitchell, stumbled, and pulled out a gun. (Doc. 14-2 at 453–54) Mitchell saw the gun, started running away, and heard three gunshots behind him. (Doc. 14-2 at 454–57) Surveillance video showed Dixon raise his arm and point the gun towards Mitchell twice. (Doc. 14-2 at 458–59, 527)

---

[1] Before trial, the trial court granted Dixon's motion to sever the felon in possession of a firearm charge from the other charges. (Doc. 14-2 at 12–13, 16)

A witness testified that a short male with dreads walked over to a bald male, punched him, stumbled, dropped a gun, picked up the gun, and fired two or three shots. (Doc. 14-2 at 438–40) The witness observed the male with dreads fire the gun when the bald male started to run away. (Doc. 14-2 at 440) Police secured an arrest warrant for Dixon and found him hiding in the bathroom of his girlfriend's apartment. (Doc. 14-2 at 471–72) When police first arrived, Dixon's girlfriend denied that she knew Dixon and denied that he was at her home. (Doc. 14-2 at 471–72)

During a recorded interrogation, Dixon claimed that Mitchell confronted him about the disagreement between the sisters. (Doc. 14-2 at 513) Dixon's girlfriend started talking to Mitchell, Mitchell threatened Dixon's girlfriend, and Dixon tried to punch Mitchell in the face but missed. (Doc. 14-2 at 513–14) Dixon admitted that he had a gun in his pocket. (Doc. 14-2 at 515–17) Dixon claimed that, when he pulled the gun out, the gun accidentally fired once. (Doc. 14-2 at 523–25) After the shooting, Dixon threw away the gun. (Doc. 14-2 at 522) After admitting that he wrongly possessed the gun, Dixon lamented, "I'm going to roast." (Doc. 14-2 at 524)

During the defense's case-in-chief, Elizabeth Cody denied that she was Dixon's girlfriend and claimed that she was only his friend. (Doc. 14-2 at 537) She testified that Mitchell came to her apartment and attacked her because she had beat up her sister, who was Mitchell's girlfriend. (Doc. 14-2 at 538–39) Cody had armed herself with a gun for protection and defended herself by firing the gun once in the air. (Doc. 14-2 at 539–41, 543) Cody denied that Dixon was present. (Doc. 14-2 at 539, 541) She claimed that Dixon told her that he would "take the rap" for the crime. (Doc. 14-2 at 556)

## STANDARDS OF REVIEW

**AEDPA**

Because Dixon filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Dixon asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

*Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

In decisions without a written opinion, the state appellate court affirmed the orders denying Dixon post-conviction relief. (Doc. 14-2 at 77, 168, 231) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Because the post-conviction court provided reasons for denying Dixon's claims in a written order (Doc. 14-2 at 63, 127–28, 215), this Court evaluates those reasons under Section 2254(d).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Also, a petitioner's failure to comply with a state procedural rule governing the proper presentation of a claim bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with

an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner. *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)).

To excuse a procedural bar on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

### Ground One

Dixon asserts that the trial court violated his federal rights by erroneously instructing the jury on the firearm enhancement for aggravated assault. (Doc. 1 at 6) He contends that he raised the claim on direct appeal and post-conviction. (Doc. 1 at 7) The Respondent asserts that, because Dixon failed to alert the state court to the federal nature of his claim on direct appeal, the claim is unexhausted and procedurally barred. (Doc. 14 at 17)

In his brief on appeal (Doc. 14-2 at 647–54), Dixon raised a similar claim but failed to "cit[e] in conjunction with the claim the federal source of law on which he relie[d] or a case deciding such a claim on federal grounds, or [ ] simply label[ ] the claim 'federal.'" *Reese*, 541 U.S. at 32. Dixon instead cited state court opinions to argue that the trial court's failure to give the appropriate jury instruction for the firearm enhancement resulted in reversible error. (Doc. 14-2 at 648–54) Because Dixon failed to alert the state court to the federal nature of his claim, he failed to exhaust the claim on direct appeal. *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

In his motion for post-conviction relief, Dixon asserted different claims. He asserted that the trial court violated his federal rights by imposing the mandatory minimum term for the firearm enhancement at sentencing and that the prosecutor violated his federal right to due process by failing to give adequate notice of the firearm enhancement. (Doc. 14-2 at 108–12) Also, Dixon asserted that trial counsel was ineffective for not objecting to the jury instruction for the firearm enhancement. (Doc. 14-2 at 113–18) Because Dixon did not raise a federal claim challenging the sufficiency of the language of the jury instruction, Dixon failed to exhaust the claim on post-conviction. *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1345 (11th Cir. 2004) ("The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.") (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

If Dixon returns to state court to exhaust the claim, the post-conviction court will deny the claim as procedurally barred. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Consequently, this Court denies the claim as procedurally barred on federal habeas. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998). Because Dixon fails to demonstrate either cause and actual prejudice or a miscarriage of justice to excuse the procedural bar, the claim is barred from federal review. (Doc. 15 at 8–13) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Ground One is **DENIED**.

**Ground Two**

Dixon asserts that the trial court erred by imposing the five-year prison sentence for the carrying a concealed firearm conviction consecutively to the twenty-year mandatory minimum term for the firearm enhancement on the aggravated assault conviction. (Doc. 1 at 8) He contends that the consecutive five-year sentence is illegal because the two crimes arose from a single criminal episode and the victim was neither shot nor injured. (Doc. 1 at 8) The post-conviction court denied the claim as follows (Doc. 14-2 at 63) (state court record citations omitted):

> Defendant argues that his consecutive sentences are illegal as the crimes arose from a single criminal episode. The record indicates that the Defendant was sentenced to twenty years in Florida State Prison on count one, Aggravated Assault with a Firearm. Defendant's sentence is a twenty-year minimum mandatory sentence pursuant to Fla. Stat. § 775.087(2). Defendant was sentenced to five years in Florida State Prison on count two, Carrying a Concealed Firearm. Counts one and two are to run consecutive to one another.

> The Court finds that the Defendant's claim should have been raised pursuant to Fla. R. Crim. P. 3.850. As filed, Defendant's motion is legally insufficient. However, the Court finds that it can deny the Defendant's claim on its merits based upon the holding in *Martin v. State*, 190 So. 3d 252 (Fla. 1st DCA 2016). Because the Carrying a Concealed Firearm count was not charged as a Fla. Stat. 775.087(2) offense, it can run consecutively to count one.

The post-conviction court denied the claim as procedurally barred because the claim was not cognizable in the post-conviction proceedings. *See Coughlin v. State*, 932 So. 2d 1224, 1226 (Fla. 2d DCA 2006). Because the Respondent fails to assert that the denial of the claim on this independent and adequate state procedural ground bars federal review the Respondent waives the defense. (Doc. 14 at 24–26) *Smith v. Sec'y, Dep't Corrs.*, 572 F.3d 1327, 1339–40 (11th Cir. 2009).

However, the claim is meritless. Because the claim raises an issue of state law and a federal court cannot grant relief for a violation of state law, the claim is not cognizable on federal habeas. 28 U.S.C. § 2254(a) (authorizing relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"). *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[W]e consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.").

Even if the claim is cognizable on federal habeas, a federal court defers to a state court's determination of state sentencing law. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985). *Martin v. State*, 190 So. 3d 252, 255 (Fla. 1st DCA 2016), held that Section 775.087(2)(d) requires a trial court to impose a sentence for an offense that qualifies for a firearm enhancement consecutively to a sentence for an offense that does not qualify for a firearm enhancement. In *Martin*, 190 So. 3d at 253, the defendant received a mandatory minimum twenty-year sentence for an aggravated battery conviction with a firearm enhancement and a consecutive five-year sentence for a possession of a firearm by convicted felon conviction without a firearm enhancement.  *Martin*, 190 So. 3d at 255, affirmed the consecutive sentences because the plain language of Section 775.087(2)(d) (bolding added), required the trial court to run the sentences consecutively:

> It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. **The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.**

The information charged Dixon with aggravated assault with a firearm enhancement and carrying a concealed firearm without a firearm enhancement. (Doc. 14-2 at 8)[2] Because the aggravated assault charge qualified for a firearm enhancement and the carrying a concealed firearm charge did not qualify for a firearm enhancement, Section 775.087(2)(d) required the trial court to run the sentences for both convictions consecutively. Consequently, the post-conviction court did not unreasonably deny the claim.

Dixon asserts that the consecutive sentences were illegal because the crimes arose from the same criminal episode and the victim was neither shot nor injured. (Doc. 1 at 8) *Williams v. State*, 186 So. 3d 989, 993 (Fla. 2016), holds that "consecutive sentencing of mandatory minimum imprisonment terms for multiple firearm offenses is impermissible if the offenses arose from the same criminal episode and a firearm was merely possessed but not discharged." *Williams*, 186 So. 3d at 993, clarifies that "[i]f . . . multiple firearm offenses are committed contemporaneously, during which time multiple victims are shot at, then consecutive sentencing is permissible but not mandatory."

The trial court did not impose consecutive mandatory minimum terms for firearm offenses. The trial court imposed a single mandatory minimum term for the firearm enhancement for the aggravated assault conviction. (Doc. 14-2 at 26) The information did not charge Dixon with a firearm enhancement for carrying a concealed weapon (Doc. 14-2 at 8), and the trial court sentenced Dixon to five years for that conviction without a mandatory minimum term. (Doc. 14-2 at 25–26) Because the bar on consecutive sentencing

---

[2] Section 775.087 did not authorize a firearm enhancement for the carrying a concealed firearm charge. § 775.087(2)(a)(1), Fla. Stat. (2015).

for firearm enhancements under *Williams* did not apply, the post-conviction court did not unreasonably deny Dixon's claim.

Lastly, if the Court could construe Ground Two as asserting that Dixon's sentences violated double jeopardy, the sentences did not violate double jeopardy, as explained in Ground Five below. The legislature required the trial court to run the sentence for the aggravated assault conviction with a firearm enhancement consecutively to the sentence for the carrying a concealed firearm conviction without a firearm enhancement. § 775.087(2)(d), Fla. Stat. Also, each offense required proof of an element that the other offense did not. Consequently, as explained below, even though the offenses occurred during the same criminal episode, the sentences for the three convictions did not violate double jeopardy.

Ground Two is **DENIED**.

## Ground Three

Dixon asserts that the trial court violated his federal right to due process by failing to comply with the plain language of Section 775.087 when imposing the mandatory minimum term for the firearm enhancement for the aggravated assault conviction. (Doc. 1 at 9–10) The Respondent asserts that the claim is procedurally barred. (Doc. 14 at 27–28) The post-conviction court denied the claim as follows (Doc. 14-2 at 127) (state court record citations omitted):

> In his Motion, Defendant raised [the following] claim[ ] of error: . . . Trial Court erred when it deviated from the language of Fla. Stat. 775.087[.]
>
> . . .
>
> Defendant argues trial court error. This Court finds that trial court errors are not cognizable in a Rule 3.850 Motion and should be raised on direct appeal. The Court finds that the State did give notice of its intent to seek enhanced sentencing

> pursuant to Fla. Stat. 775.087. Additionally, as the Defendant was found to be in possession of a firearm, and that he discharged said firearm, the application of Fla. Stat. 775.087 was proper.

The post-conviction court denied the claim as procedurally barred. Fla. R. Crim. P. 3.850(c). The post-conviction court's denial of the claim on this independent and adequate state procedural ground bars federal review of the claim. *LeCroy v. Sec'y, Fla. Dep't Corrs.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) (citing *Whiddon v. Dugger*, 894 F.2d 1266, 1267–68 (11th Cir. 1990)). Even though the post-conviction court alternatively reviewed the merits of the claim, the claim is procedurally barred on federal habeas. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). Because Dixon fails to demonstrate either cause and actual prejudice or a miscarriage of justice to excuse the procedural bar, the claim is barred from federal review. (Doc. 15 at 8–13) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Ground Three is **DENIED**.

**Ground Four**

Dixon asserts that trial counsel was ineffective for not objecting to the jury instruction on the firearm enhancement for aggravated assault. (Doc. 1 at 11) The post-conviction court denied the claim as follows (Doc. 14-2 at 127) (state court record citations omitted):

> In his Motion, Defendant raised [the following] claim[ ] of error: . . . Trial counsel allowed the Court to give an erroneous jury instruction[.]
>
> Defendant argues that trial counsel allowed the Court to give an erroneous jury instruction. Defendant writes that actual possession was not defined and the jury was not instructed on the application of Fla. Stat. 775.087. After review of the instructions given by the Court, and the verdict form, the Court finds no error. Defendant has failed to show deficient performance or prejudice.

14

Whether the jury instructions adequately instructed the jury on the firearm enhancement is an issue of state law, and a state court's determination of state law receives deference in federal court. *Niziolek v. Ashe*, 694 F.2d 282, 290 (1st Cir. 1982) ("As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief. Instructions in a state trial are a matter of state law to which substantial deference is owed.") (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).

Florida Standard Criminal Jury Instruction 3.3(d) (2015), the standard instruction for the firearm enhancement, states:

> If you find that (defendant) committed (felony identified in § 775.087(2)(a)(2), Fla. Stat.) and you also find beyond a reasonable doubt that during the commission of the crime, [he][she] discharged a [firearm][destructive device], you should find the defendant guilty of (felony) with discharge of a [firearm][destructive device].
>
> . . .
>
> A ["firearm"] ["destructive device"] is legally defined as (adapt from § 790.001(4) or § 790.001(6), Fla. Stat.).

Careful review of the jury instructions reveals that the trial court gave the standard instruction to the jury. (Doc. 14-2 at 595–615) The trial court presented the jury with a verdict form that contained the relevant instruction requiring proof that the defendant discharged the firearm (Doc. 14-2 at 18) (bolding added):

> We, the jury, find as follows, as to COUNT 1: (check only one as to this count)
>
> ___ a. The defendant is guilty of Aggravated Assault, as charged.
>
> If you find the Defendant guilty of Aggravated Assault, you must next make further findings (pick one):

___ During the commission of the crime, the Defendant did carry, display, use, threaten to use, or attempt to use a firearm.

___ During the commission of the crime, the Defendant did not carry, display, use, threaten to use, or attempt to use a firearm.

If you find that during the commission of the crime, the Defendant did carry, display, use, threaten to use, or attempt to use a firearm, you must next make further findings (pick one):

**___ During the course of the commission of the crime, the Defendant did discharge a firearm.**

**___ During the course of the commission of the crime, the Defendant did not discharge a firearm.**

The trial court provided the following instructions to the jury concerning this relevant

portion of the jury verdict form (Doc. 14-2 at 609–10) (bolding added):

[Court:]          If you choose option A, which is, "The Defendant is guilty of aggravated assault as charged," then there's some additional information and additional findings you're required to make. So, if you pick A, please follow what's indented under A on the form.

And the further findings are, "If you find the Defendant guilty of Aggravated Assault, you must next make further findings. Pick one." And there are two options under that little subheading. One of the options is, "During the commission of the crime, the Defendant did carry, display, use, threaten to use, or attempt to use a firearm." If that's what you find, check the box.

The other option is, "During the commission of the crime, the Defendant did not carry, display, use, threaten to use, or attempt to use a firearm." If that's what you find, check the appropriate box. And then there's another finding. You'll go on under A, if you pick A, and the other

finding is, "If you find that during the commission of the crime the Defendant did carry, display, use, threaten to use, or attempt to use a firearm, you must next make a further finding." And, again, "Pick one."

The first choice is, **"During the course of the commission of the crime, the Defendant did discharge a firearm."** If that's what you find, check that box. Or, "During the course of the commission of the crime, the Defendant did not discharge a firearm." If that's what you find, check that box. Now, those special findings only have to be made if you pick Option A. Otherwise, you'll pick Options B, C, D, or E. And then that completes Count One.

Also, the trial court defined the word "firearm" when presenting the instructions for carrying a concealed firearm, improper exhibition of a firearm as a lesser included offense, and discharging a firearm in public as a lesser included offense. (Doc. 14-2 at 597–601) The definition of "firearm" presented by the trial court tracked the language required by the standard instruction for the firearm enhancement. Fla. Std. Jury Instr. (Crim.) 3.3(d) (2015) (citing § 790.001(6), Fla. Stat. (2015)).

During the charge conference, the trial judge and the parties agreed that the jury verdict form adequately instructed the jury on the firearm enhancement (Doc. 14-2 at 487):

[Trial court:]     All right. And then aggravated assault. Let's see, that's charged in Count One. I note that Count One alleges that the assault was committed with a firearm, a deadly weapon, and that the firearm was discharged. And those additional factors aren't particularly referenced in the proposed instruction 8.2, although it does allege the elements of aggravated assault and alleged that the assault was made with

|  | a deadly weapon. So I don't know if there's any significant in that or not. |
|---|---|
| [Prosecutor:] | Your Honor, the specific findings that are accompanied on the verdict form will address the rest of that. |
| [Trial court:] | I understand but I raise that because, you know, I'm comparing the proposed instruction with the actual charging document, to call that to the attention of the defense in the event the defense wants to make note of it or has any particular request in that regard. |
| [Trial counsel:] | Your Honor, Instruction 8.2 does appear to be standard. I have no objection. I believe Mr. Levine is correct. The verdict form will suffice for the additional findings regarding the violence. |

Because the record refutes Dixon's claim, the post-conviction court did not unreasonably deny the claim. The information charged Dixon with the firearm enhancement by alleging that Dixon "did commit the assault with a firearm, a deadly weapon, and during the course of the commission of said offense the firearm was discharged, contrary to Florida Statutes 784.021 and 775.087." (Doc. 14-2 at 8) At trial, Mitchell testified that he ran away when he saw Dixon pull out a gun and subsequently heard three gunshots behind him. (Doc. 14-2 at 453–57) Surveillance video showed Dixon raise his arm and point the gun towards Mitchell. (Doc. 14-2 at 458–59, 527) A witness observed Dixon fire the gun. (Doc. 14-2 at 440) Dixon admitted to the detective that he possessed a gun that evening. (Doc. 14-2 at 523–25) On the verdict form, the jury found that (Doc. 14-2 at 18): "During the course of the commission of the crime, [Dixon] did discharge a firearm." The jury's finding required the trial court to impose the twenty-year mandatory minimum term. § 775.087(2)(a)(2), Fla. Stat. (2015).

Dixon asserts that trial counsel should have objected to the lack of an instruction on the definition of "actual possession." (Doc. 15 at 13–14) Section 775.087(2)(a)(1) authorizes a three-year mandatory minimum term if a defendant is convicted of aggravated assault and "actually possessed a 'firearm' or 'destructive device'" during the commission of the offense. The information did allege that Dixon committed the aggravated assault "while in actual possession of a firearm." (Doc. 14-2 at 8) However, the jury found that Dixon discharged the firearm. By finding that Dixon discharged the firearm, the jury necessarily determined that Dixon actually possessed the firearm. Dixon could not demonstrate a reasonable probability that, if trial counsel had requested an instruction for actual possession, the jury would have rejected the firearm enhancement for discharging a firearm and instead found that Dixon only possessed the firearm. Consequently, Dixon could not demonstrate prejudice under *Strickland*. *Strickland*, 466 U.S. at 694. *Crapser v. Sec'y, Dep't Corrs.*, 855 F. App'x 626, 628 (11th Cir. 2021) ("Under Florida law, a jury must 'render a true verdict according to the law and the evidence' and, therefore, a jury is permitted to convict of a lesser included offense 'only if it decides that the main accusation has not been proved beyond a reasonable doubt.' *Strickland* requires that we assume the jury in Crapser's trial followed this rule of law.") (citing *Sanders v. State*, 946 So. 2d 953, 960 (Fla. 2006)).

Ground Four is **DENIED**.

**Ground Five**

Dixon asserts that trial counsel was ineffective for not asserting at sentencing that the consecutive sentences for the aggravated assault with a firearm, carrying a concealed firearm, and possession of a firearm by a convicted felon convictions violated his federal

right against double jeopardy. (Doc. 1 at 12) He contends that the three convictions all arose from his possession of a single firearm during the same criminal episode. (Doc. 1 at 12)

Dixon raised this claim based on a violation of double jeopardy in his post-conviction motion. (Doc. 14-2 at 119–20) The post-conviction court denied the claim as follows (Doc. 14-2 at 127–28) (state court record citations omitted):

> In his Motion, Defendant raised [the following] claim[ ] of error: . . . Trial counsel failed to object to consecutive sentences.
>
> . . .
>
> Defendant alleges that trial counsel was ineffective for failing to object to consecutive sentences. That claim has previously been raised and then denied in an order dated May 31, 2017. The Second District Court of Appeal affirmed and issued a Mandate on February 6, 2018.

The post-conviction court denied the claim as procedurally barred. *See Rogers v. State*, 970 So. 2d 884, 885 (Fla. 2d DCA 2007) ("Collateral estoppel 'bars relitigation of the same issues between the same parties in connection with a different cause of action.'"); *Wood v. State*, 867 So. 2d 590, 592 (Fla. 5th DCA 2004) ("It is clear that the rulings in the prior collateral attack raising the same issues presented here became the law of the case and cannot be re-litigated in a subsequent post-conviction motion."). Because the Respondent fails to assert that the denial of the claim on this independent and adequate state procedural ground bars federal review (Doc. 14 at 31–33), the Respondent waives the defense. *Smith*, 572 F.3d at 1339–40.

"[T]he Double Jeopardy Clause '. . . protects against multiple punishments for the same offense.'" *Albernaz v. United States*, 450 U.S. 333, 343 (1981) (citation omitted). However, *Fallada v. Dugger*, 819 F.2d 1564, 1572 (11th Cir. 1987) explains that, if the

20

legislature intended to authorize multiple punishments, the imposition of multiple punishments does not violate double jeopardy:

> "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). In *Whalen v. United States*, 445 U.S. 684, 688–89 (1980) the Supreme Court held that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized;" the "dispositive question" is whether the legislature intended to authorize separate punishments for the crimes. "This is so because the 'power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress.'" *Albernaz v. United States*, 450 U.S. 333, 344 (1981) (quoting *Whalen*, 445 U.S. at 689). "Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* (footnote omitted).

*Williams v. Singletary*, 78 F.3d 1510, 1513 (11th Cir. 1996), identifies two steps that a court must follow when reviewing whether multiple punishment violates double jeopardy:

> First, [a court] ascertain[s] whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct. If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply. If there is no clear indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of *Blockburger* [*v. United States*, 284 U.S. 299 (1932)]. Under that test, if each statutory offense requires proof of an element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment. Otherwise, double jeopardy principles prohibit cumulative punishment.

The trial court sentenced Dixon to twenty years of prison with a twenty-year mandatory minimum term for the aggravated assault conviction, a consecutive five years of prison for the carrying a concealed firearm conviction, and a concurrent five years of prison with a three-year mandatory minimum term for the possession of a firearm by a convicted felon conviction. (Doc. 14-2 at 21–28, 37–43)

Because Dixon asserts that trial counsel was ineffective for not objecting to consecutive sentences (Doc. 1 at 12) and the trial court imposed the sentence for the possession of a firearm by a convicted felon conviction concurrently (Doc. 14-2 at 42), the record refutes the claim for that conviction.[3] Also, because the carrying a concealed firearm conviction required proof of an element that the convictions for aggravated assault and possession of a firearm by a convicted felon did not require, the concurrent sentence for carrying a concealed firearm did not violate double jeopardy. *See State v. Maxwell*, 682 So. 2d 83, 84 (Fla. 1996) ("While each of the offenses contains the common element of possession of a firearm, each requires proof of an element that the others do not. Section 790.01(2) requires proof that the firearm was 'concealed'; . . . and section 790.23 requires proof that the person who was in possession of the firearm had been 'convicted of a felony.'").

As explained above, the information charged aggravated assault with a firearm enhancement and carrying a concealed firearm without a firearm enhancement. (Doc. 14-2

---

[3] The Respondent further asserts that Dixon waived the double jeopardy challenge to the possession of a firearm by a convicted felon conviction by pleading guilty. However, "'a defendant does not waive a double jeopardy challenge when, judged on the basis of the record that existed at the time the guilty plea was entered, the second count is one the government may not constitutionally prosecute.'" *United States v. Bonilla*, 579 F.3d 1233, 1240 (11th Cir. 2009) (citation omitted).

at 8) Section 775.087(2)(d) (2015) (bolding added) requires the trial court to run the sentence for the offense qualifying for a firearm enhancement consecutively to the sentence for an offense that does not qualify for a firearm enhancement:

> It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. **The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.**

*Williams v. State*, 186 So. 3d 989, 992 (Fla. 2016), construes the plain language of the statute as follows:

> As written, paragraph (2)(d) contemplates two distinct imprisonment terms: a term imposed for a qualifying felony pursuant to subsection (2), and a term imposed for a non-qualifying felony. . . . Specifically, it expressly mandates only that a qualifying felony sentence run 'consecutively to' any sentence imposed for a non-qualifying felony.

Because aggravated assault qualified for a firearm enhancement and carrying a concealed firearm did not qualify for a firearm enhancement, Section 775.087(2)(d) required the trial court to run the sentences for the offenses consecutively. Because the Florida legislature authorized cumulative punishment for both offenses, the consecutive sentences did not violate double jeopardy. *Hunter*, 459 U.S. at 368–69.

Also, Section 775.021(4)(a), Florida Statutes (2015), grants a trial judge the discretion to impose sentences for two offenses consecutively, even if the defendant commits the offenses in the same criminal transaction or episode:

> Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt,

shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

Aggravated assault requires proof that (1) the defendant intentionally and unlawfully threatened, either by word or act, to do violence to the victim, (2) the defendant appeared to have the ability to carry out the threat, and (3) the act created in the mind of the victim a well-founded fear that violence was about to take place. Fla. Std. Jury Instr. (Crim.) 8.2 (2015). §§ 784.011(1) and 784.021(1)(a), Fla. Stat. (2015). Carrying a concealed firearm requires proof that (1) a defendant knowingly carried on his or her person a firearm, (2) the firearm was concealed from the ordinary sight of another person, and (3) the defendant was not licensed to carry a concealed weapon. Fla. Std. Jury Instr. (Crim.) 10.1 (2015). § 790.01(2), Fla. Stat. (2015). Because carrying a concealed weapon requires proof of an element that aggravated assault does not, Section 775.021(4)(a) authorized the trial judge to impose consecutive sentences for the convictions, even if the crimes occurred during the same criminal episode.

At sentencing, the trial judge exercised discretion to impose the consecutive sentences, even if Section 775.087(2)(d) did not require consecutive sentencing (Doc. 14-2 at 634–35):

> [Trial court:]    I think, in light of your prior history, the State has compelling argument here with regard to Count Two. You're adjudicated guilty. You're sentenced to five years in Florida State Prison consecutive to the twenty years on Count One, for a total of twenty-five years toward which, again, you will receive all credit for time served.

> Now, having said that, I want to note that, if the Court is required to have imposed a consecutive sentence pursuant to 775.087(2)(d), I've done that. However, if that is not required by virtue of the fact that it's the same criminal episode and this provision doesn't require the imposition of consecutive sentences with regard to the same criminal episode, nonetheless, the Court would have that discretion in light of the fact that the Defendant scores prison anyway.
>
> So, to the extent that I have the discretion to impose that sentence, I would choose to exercise my discretion in that regard, if it's not otherwise required, pursuant to 775.087(2)(d).

Because the legislature granted the trial court discretion to impose cumulative punishment under Section 775.021(4)(a), the consecutive sentences did not violate double jeopardy. *Hunter*, 459 U.S. at 368–69.

Ground Five is **DENIED**.

**Ground Six**

Dixon asserts that the trial court lacked subject matter jurisdiction over the prosecution for carrying a concealed firearm and possession of a firearm by a convicted felony because possession of the same firearm was an essential element of the aggravated assault conviction. (Doc. 1 at 14) The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 14 at 33–34)

Dixon raised the claim in a motion for correction of sentence but failed to appeal the post-conviction court's order denying the claim. (Doc. 14-2 at 172–73)  Because Dixon failed to give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process, he failed to exhaust

the claim. *O'Sullivan*, 526 U.S. at 845. If Dixon returned to state court to exhaust the claim, the state court would deny the claim as procedurally barred. Fla. R. Crim. P. 3.800(a)(2) and 3.850(h). Consequently, this Court denies the claim as procedurally barred on federal habeas. *Snowden*, 135 F.3d at 736. Because Dixon fails to demonstrate either cause and actual prejudice or a miscarriage of justice (Doc. 15 at 17–18), the claim is barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Ground Six is **DENIED**.

**Ground Seven**

Dixon asserts that the trial court unlawfully imposed the twenty-year mandatory minimum term for the aggravated assault conviction because the legislature amended the firearm enhancement statute and removed aggravated assault from the list of offenses that qualify for the enhancement. (Doc. 1 at 16) He contends that the legislature amended the statute before his convictions and sentences became final. (Doc. 1 at 16) The post-conviction court denied the claim as follows (Doc. 14-2 at 215):

> Defendant first argues that his twenty-year minimum mandatory sentence is illegal due to a law change that removed Aggravated Assault from the list of enumerated felonies in Fla. Stat. 775.087. The State argues that the version of Fla. Stat. 775.087 in effect when the Defendant committed the crime controls the Defendant's sentence. As such, the twenty-year minimum mandatory provision is appropriate. . . .
>
> After review of the State's arguments, citations, and attachments to its Response, adopted and incorporated herein, the Court agrees.

The post-conviction court adopted the following from the prosecutor's response to Dixon's post-conviction motion (Doc. 14-2 at 205–07):

A. Statutory Changes

A claim pursuant to a new rule of law may only be recognized and applied on collateral review if it is determined to be fully retroactive. *Witt v. State*, 387 So. 2d 922, 926 (Fla. 1980). "[T]he essential considerations in determining whether a new rule of law should be applied retroactively are essentially three: (a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule." *Id.* (citing *Stovall v. Denno*, 388 U.S. 293, 297 (1967); *Linkletter v. Walker*, 381 U.S. 618 (1965); *Brewer v. State*, 264 So. 2d 833, 834 (Fla. 1972); *State v. Steinhauer*, 216 So. 2d 214, 219 (Fla. 1968), *cert. denied*, 398 U.S. 914 (1970)). This same claim was recently examined by the Fourth District Court of Appeal in *State v. Reininger*, 254 So. 3d 996 (Fla. 4th DCA 2018). In that case, the State appealed the sentencing court's application of the amendment to § 775.087, whereby [ ] Reininger was sentenced to three-years' probation as opposed to three years minimum mandatory prison. The sentencing court reasoned that the legislature intended the new sentencing scheme be applied, otherwise it would have specified "commission" not "conviction." Since the conviction occurred after the change, the court refused to impose the minimum mandatory in effect on the date of offense. *Reininger*, 254 So. 3d at 998. The appellate court disagreed with this analysis and reversed for resentencing consistent with its opinion. *Reininger*, 254 So. 3d at 1000.

The Fourth District noted that "Florida courts have repeatedly held that [the] prohibition on retroactive application of statutes only applies to statutes that effect substantive change in the law; it has no application to changes in the law that are merely procedural or remedial." Changes to sentencing statutes are substantive changes where they relate to the "elements of the offense or the punishment therefor." *Reininger*, 254 So. 3d at 999 (citing *Grice v. State*, 967 So. 2d 957, 960 (Fla. 1st DCA 2007)). The court further cited Judge Wolf's concurring opinion in *Wright v. State*, 225 So. 3d 914 (Fla. 1st DCA 2017) wherein he wrote that the defendant not having "the benefit of the discretionary version of the statute was a matter of 'bad timing' for the defendant, since 'the offense was committed prior to' [the amendment of section 775.087]." *Reininger*, 254 So. 3d at 1000 (quoting *Wright*, 225 So. 3d at 915). The version of § 775.087 under which the Defendant should be sentenced "is the one in effect on the date that he committed the crime." *Reininger*, 254 So. 3d at 1000. This Court sentenced the

> Defendant to the minimum mandatory as required by law. No change is required.

Whether a state statute retroactively applies to a criminal case is an issue of state law, and a state court's determination of state law receives deference in federal court. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citation omitted).

Dixon committed the aggravated assault on March 3, 2015. (Doc. 14-2 at 8) The legislature enacted a law, effective on July 1, 2016, removing aggravated assault from the list of offenses that qualify for a firearm enhancement. Ch. 2016-7, § 1, Laws of Fla. On February 15, 2017, the state appellate court affirmed Dixon's convictions and sentences. (Doc. 14-2 at 47)

The Florida constitution bars retroactive application of a criminal statute. *Smiley v. State*, 966 So. 2d 330, 336 (Fla. 2007) ("'Repeal or amendment of a *criminal statute* shall not affect prosecution or punishment for any crime previously committed.'") (italics in original) (quoting Art. X, § 9, Fla. Const.). Because the amendment to the firearm enhancement reduced the prescribed punishment for the crime, the amendment did not retroactively apply to Dixon's criminal case. *State v. Reininger*, 254 So. 3d 996, 999 (Fla. 4th DCA 2018) ("[A] sentencing statute prescribing the punishment for a crime, such as section 775.087, qualifies as a 'criminal statute' for purposes of applying Article X, section 9."). *See also Stapleton v. State*, 286 So. 3d 837, 840 (Fla. 5th DCA 2019) ("Florida courts have consistently held that, based on article X, section 9, the criminal statute in effect *at the time of the crime* governs the sentence an offender receives for the commission of that crime.") (italics in original).

Ground Seven is **DENIED**.

Accordingly, it is **ORDERED** that Dixon's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Dixon and **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Dixon neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on January 3, 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE